## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| JESSICA BENSLEY, | : | |
| | : | CIVIL ACTION # 4:20-cv-00329 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| PAUL PATE, Iowa Secretary of State, and | : | |
| JAMIE FITZGERALD, Polk County | : | |
| Auditor, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

### PRELIMINARY STATEMENT

The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. Undeniably, the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of Supreme Court cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote.

Plaintiff Jessica Bensley was denied this fundamental right in the most obvious and egregious way when she was erroneously placed on a list of people excluded from voting because of a felony conviction.  Until August 5, 2020, when Governor Kim Reynolds signed Executive Order 7 restoring the majority of Iowa felons' right to vote, Iowa was the last State in the Union that automatically excluded felons from exercising their constitutional right to vote.

Bensley was never convicted of a felony and was therefore otherwise qualified to vote even prior to the August 5, 2020, executive order.  When Bensley was informed by letter her November 6, 2018 vote was rejected, Bensley was denied this most fundamental and

important of her constitutional rights.  Furthermore, Bensley was never given notice of her placement on this list prior to casting her 2018 vote, and therefore never given the opportunity to challenge the denial of that right.  To compound this denial, Defendants Pate and Fitzgerald were well aware of the problems plaguing the felony exclusion voter list for years and yet took no meaningful steps to protect Bensley or any other citizen from losing this most fundamental constitutional right.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this Verified Complaint under the Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1402(b) because the acts at issue in this lawsuit occurred within the District.

## PARTIES

3.      Plaintiff Jessica Bensley ("Bensley") is a citizen of the United States and at all relevant times was a resident of Des Moines, Polk County, Iowa.

4.      Defendant Paul Pate ("Pate") was at all times relevant to this Complaint the Iowa Secretary of State.  In his capacity as the Iowa Secretary of State, Defendant Pate had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws.  Defendant Pate is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the State of Iowa. At all times relevant to this Complaint he was acting under color of the laws of the State of Iowa.

2

5.      Defendant Jamie Fitzgerald ("Fitzgerald") was at all times relevant to this Complaint the Auditor for Polk County, Iowa   In his capacity as the Auditor for Polk County, Defendant Fitzgerald had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws.  Defendant Fitzgerald is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with Polk County Auditor's Office. At all times relevant to this Complaint he was acting under color of the laws of the State of Iowa.

## FACTUAL ALLEGATIONS

### Jessica Bensley –  Background & Criminal Charges

6.      Plaintiff Bensley is thirty-one years old and grew up on the south side of Des Moines, Iowa.

7.      Since September of 2018, Bensley has been employed as a sub-contractor with Natural Standards Cleaning, LLC and cleans residential homes in the greater Des Moines area.

8.      In June of 2011, then 23-year-old Bensley was charged with a felony for being an accessory after the fact to a burglary committed by her then abusive boyfriend.

9.      That night Bensley was called by the boyfriend who persuaded her that he was at a party and too drunk to drive home.

10.      Bensley agreed to pick up the boyfriend at an address in West Des Moines but unknown to Bensley was the fact that the boyfriend had just kicked in a woman's door and robbed her right before Bensley picked him up.

11.      Bensley and the boyfriend were stopped within a few blocks of the woman's house by the West Des Moines Police.

12.     As a result of this incident, Bensley was charged with the felony but pled to an amended misdemeanor charge and received a suspended sentence after testifying against her ex-boyfriend at trial.

13.     Bensley had been charged with two other felonies in her youth but both of those charges were completely dismissed by prosecutors in Polk County, Iowa.

14.     In other words, Bensley has never pleaded guilty to, been found guilty of, or received a deferred judgment for a felony in the State of Iowa or in any other jurisdiction in the United States.

15.     Between 2012 and 2018, Bensley regularly and consistently participated in her democracy and exercised her constitutional right to vote in Polk County, Iowa in both local and national elections.

16.     For the last four years, Bensley has lived at the same address and has voted at Staves United Methodist Church on East Madison Avenue in Des Moines, Iowa.

17.     On November 6, 2018, as usual, Bensley cast her vote at Staves United Methodist Church in Polk County, Iowa in the general election.

**Iowa's Felon-Exclusion Voter Law & Problems with the Felon-Exclusion List**

18.     At the time Bensley cast her November 2018 ballot, Iowa was one of only a handful of state's that denied felons the right to vote.

19.     Prior to August 5, 2020, Iowa's felony voter law permanently banned a person convicted of a felony from voting unless that person successfully petitioned the governor or United States President to restore their voting rights.

20.     Defendant Pate and the Iowa Secretary of State's office was/is responsible for keeping the "I- VOTERS" list which contains the names of all registered voters and all voters who have successfully petitioned for restoration.

21. Defendant Pate and his office also maintained in that database list of all people who are banned from voting in Iowa because of a felony conviction.

22. Defendant Pate's felony exclusion database was/is developed from the names sent to him by the Clerks of Courts of all ninety-nine counties in Iowa as well as the Clerks of Courts from Southern and Northern Districts of Iowa (and other Federal District Courts if the person lists a residence in Iowa).

23. Defendant Pate and his office then check to see whether the names provided are registered to vote in any of Iowa's ninety-nine counties and, if so, notifies the appropriate County Auditor's office of that person's felon status.

24. In other words, Defendant Pate and his office send a list to each County Auditor with the names of registered voters in that county who are banned from voting as result of a felony conviction.

25. Defendant Pate did not have any steps or standards in place to verify the accuracy of the information provided to him by the Clerks of Courts before sending that information onto the County Auditors to exclude people from exercising their constitutional right to vote.

26. Instead, Defendant Pate has maintained that the onus is on Defendant Fitzgerald and other County Auditors to verify the accuracy of the information that he and his office provided to them.

27. Defendant Fitzgerald was the Polk County Auditor in November, 2018 and is still the Polk County Auditor as of the filing of this lawsuit.

28. As the Polk County Auditor, Defendant Fitzgerald was responsible for maintaining a list of registered voters from Defendant Pate whose ballots should be rejected in Polk County as a result of a felony conviction.

29.     Within fifteen days of receiving a list/name from Defendant Pate, Defendant Fitzgerald was responsible for verifying the accuracy of the state database/list and to remove the names of registered voters deemed ineligible because of a felony conviction.

30.     Defendant Fitzgerald and other County Auditors did not regularly conduct these audits or otherwise attempt to verify the information provided by Defendant Pate before excluding people from exercising their constitutional right to vote.

31.     In addition, Defendant Fitzgerald and other County Auditors were/are supposed to send a notice to voters they flag as felon excluded so that those voters would have the meaningful opportunity to challenge their exclusion before their ballots would not be counted.

32.     Defendant Fitzgerald and other County Auditors did not consistently provided notice to those potential voters who Defendant Fitzgerald and the other County Auditors deemed excluded because of felony convictions.

33.     Defendant Fitzgerald has maintained that his office and the other County Auditors' offices cannot be responsible for fixing all errors in the database and that some of the responsibility must fall on the Courts and on Defendant Pate.

34.     Defendants Pate and Fitzgerald and their offices and predecessors had been aware since at least 2012 that the felony exclusion database was rife with errors and has been excluding people from exercising their constitutional right to vote.

35.     On April 10, 2014, then Iowa Secretary of State Matt Schultz acknowledged problems with the felon exclusion database in a memo to state auditors.  Schultz then created a task force to make sure felon exclusion information was correct before excluding provisional ballots.

36.     The onus was put on County Auditors to verify the information by Schultz and many County Auditors pushed back saying they did not have the resources or have sufficient information to perform the necessary checks

37.     And in June of 2016, Defendant Pate cross-checked felons in his "I-VOTERS" database and discovered 2,591 incorrectly excluded voters and attempted to restore those voters to proper voting status.

38.     Despite these modest attempts to fix the serious and known constitutional problems with their felon exclusion database, Defendants Pate and Fitzgerald still maintain and use the error-riddled "I-VOTERS" felon-exclusion list to deny Iowa citizens their constitutional right to vote.

**Bensley is Unconstitionally Denied Her Right to Vote and Is Denied Due Process in Challenging that Exclusion.**

39.     After successfully voting in Polk County from 2012, Bensley cast her ballot in the November 6, 2018 general election at Staves United Methodist Church just as she had in previous elections.

40.     Bensley cast her ballot and no one indicated to Bensley that there were any potential problems or irregularities with her voting status.

41.     However, the day before Thanksgiving, Bensley received a letter dated November 20, 2018, from the Polk County Office of Elections that informed Bensley that her "provisional ballot" was rejected because she did not meet all the eligibility requirements for voting in the election.

42.     This November 20, 2018 letter was the first time Bensley received any notice that her voting status was in question.

7

43.     Prior to that letter, Bensley had received no communication from Defendants Pate or Fitzgerald or any other employee or agent of the State indicating that Bensley was being placed on the Iowa "I-VOTERS" felon-exclusion list.

44.     Bensley was obviously confused and angry about why her vote was being rejected and was determined to understand why her vote was being rejected after voting in many previous elections without any issues.

45.     Because of the Thanksgiving holiday, Bensley was unable to speak to anyone about the letter and her vote until Monday, November 26, 2018.

46.     On November 26, 2018, Bensley spoke with a woman at the Office of Elections at the number that was listed on her November 20th letter.

47.     Bensley told the woman who answered the phone that she received a letter informing her that her November 6, 2018 vote was rejected and Bensley told the woman she did not understand why her vote was rejected but she was very upset about it.

48.     The woman indicated she would dig into the matter and would call her back by the end of the day with answers for Bensley.

49.     At approximately 3:00 PM on November 26, 2018, the woman called Bensley back and informed Bensley that her name had erroneously been placed on the felon exclusion list – meaning that Bensley had been indicated as a convicted felon – in August, 2018 and that was why her ballot and vote had been rejected.

50.     When Bensley informed the woman she had never been convicted of a felony, the woman indicated she knew, that these problems happened all the time and that Bensley's name had already been removed from the list.

51.     The woman told Bensley she was sorry and that if Bensley had any future issues to call the office back and they would take care of her.

8

52.     Since that November 26, 2018 phone call, Bensley did not receive any written communication from Defendants Pate or Fitzgerald or their agents or employees confirming her removal from the "I-VOTERS" felon-exclusion database/list.

53.     A review of Bensley's I-Voter Profile Report, however, shows that despite the woman's assurances about correcting the problem, Bensley's Voter Profile is still incorrect and lists Bensley as a "Former Felon—Rights restored, Per. Sec. Of State."

54.     As previously stated, Bensley has never been convicted of a felony and thus her listing as a "former felon" still erroneously and unjustly casts Bensley in a negative light.

55.     Subsequent to her conversation with the woman at the Election's Office, Bensley did receive a Voter ID card which was identical in all respects to the card she was issued prior for her appearance on the "I-VOTERS" felon-exclusion list.

56.     Since that November 6, 2018, vote and rejection of that vote, Bensley has continued to try and exercise her constitutional right to vote, including a vote in the December 3, 2019, Des Moines mayoral run-off race.

57.     However, because Bensley was never notified prior to her November 6, 2018 vote being rejected, Bensley is now unsure of whether her constitutional right to vote is being preserved and protected and therefore whether her participation in her democracy is counted.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 – CONSTITUTIONAL TORT – DEPREVATION OR DENIAL OF RIGHT TO VOTE– DEFENDANTS PATE & FITZGERALD

58.     Plaintiff incorporates by reference the allegations of the proceeding paragraphs as though set forth at length herein.

59.     As a qualified voter, Plaintiff has a clearly established constitutional right to vote and obviously included within that right to vote, secured by the Constitution, is the right to cast the ballot for the candidate of your choice and to have that ballot counted.  By falsely placing Bensley's name on a list of disqualified felony voters in Polk County, Iowa, Defendants Pate and Fitzgerald impermissibly denied Plaintiff this constitutional right to vote, including the right to cast her ballot for the candidates of her choice and to have that ballot counted.

60.     Defendants Pate and Fitzgerald were aware that citizens were being denied their constitutional right and that the systems in place to verify and/or correct citizens mistakenly placed on the felon exclusion list were inadequate.  Despite this knowledge, Defendants Pate and Fitzgerald continued to allow citizens to lose their constitutional right to vote.

## COUNT II
## 42 U.S.C. § 1983 –  CONSTITUTIONAL TORT –DENIAL OF PROCEDURAL DUE PROCESS–  DEFENDANTS PATE & FITZGERALD

61.     Plaintiff incorporates by reference the allegations of the proceeding paragraphs as though set forth at length herein.

62.     Defendants Pate and Fitzgerald failed to provide Plaintiff with notice that her name had been placed on the "I-VOTERS" felony exclusion list and therefore, failed to provide Plaintiff with a meaningful opportunity to be heard and to challenge that erroneous placement that led to the denial of Plaintiff's fundamental right to vote.

63.     Defendants Pate and Fitzgerald were aware that citizens were failing to be notified of their placement on the "I-VOTERS" felony exclusion list yet failed to take meaningful steps to ensure citizens were being made aware of their placement on the list.

 WHEREFORE, Plaintiff respectfully requests:

10

   a.  Compensatory damages;

   b.  Punitive damages;

   c.  Reasonable attorney's fees and costs; and

   d.  Such other and further relief as may appear just and appropriate.

Plaintiff hereby demands a jury trial as to all claims stated in this Complaint.

Monday, October 26, 2020

Respectfully submitted,

*s/Glen S. Downey*
_____
Glen S. Downey                 AT0012428

THE LAW OFFICES OF GLEN S. DOWNEY, LLC
5214 Ingersoll Avenue
Des Moines, Iowa, 50312
Phone: 412-865-7110
Email: glen@downey-law.net

_____
Paul J. Statler                  AT0012577
301 East Walnut Street, Suite 7
Des Moines, Iowa 50309
Phone: 515.288.0509 Fax: 515.608.4484
Email: paul@statlerlaw.net

ATTORNEYS FOR JESSICA BENSLEY