## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| JESSICA BENSLEY,<br><br>         Plaintiff,<br><br>vs.<br><br>PAUL PATE, Iowa Secretary of State, and<br>JAMIE FITZGERALD, Polk County Auditor,<br><br>         Defendants. | Case No. 4:20-cv-00329-JAJ-HCA<br><br><br>**PAUL PATE'S MEMORANDUM OF<br>LAW IN SUPPORT OF PRE-ANSWER<br>MOTION TO DISMISS AND REQUEST<br>TO TAKE JUDICIAL NOTICE** |

COMES NOW Iowa Secretary of State Paul Pate and submits this memorandum of law in support of his Pre-Answer Motion to Dismiss and Request to Take Judicial Notice.

## TABLE OF CONTENTS

I.     STATEMENT OF THE CASE....................................................................... 2

II.    MOTION STANDARDS .............................................................................. 2

III.   JUDICIAL NOTICE...................................................................................... 3

IV.    FACTUAL AND PROCEDURAL BACKGROUND......................................... 4

V.     ARGUMENT ............................................................................................... 8

       A.    Denial of Right to Vote...................................................................... 10

       B.    Procedural Due Process ..................................................................... 11

       C.    Secretary Pate is entitled to qualified immunity from suit in his individual
             capacity and from damages in his official capacity. ............................ 12

VI.    ALTERNATIVE REQUEST FOR INTERLOCUTORY APPEAL STATEMENT........ 13

VII.   CONCLUSION............................................................................................. 14

## I.      STATEMENT OF THE CASE

Plaintiff Jessica Bensley brings this 42 U.S.C. § 1983 action alleging that Defendants Iowa Secretary of State Paul Pate and Polk County Auditor Jamie Fitzgerald violated Plaintiff's right to vote when Plaintiff's name and voting eligibility was incorrectly listed with felon status when Plaintiff voted on November 6, 2018.  [Doc. 1.]  Ms. Bensley brings two counts: (1) deprivation or denial of her right to vote, and (2) denial of procedural due process.  This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

Secretary of State Pate did not exercise any state authority when Plaintiff was asked to vote a provisional ballot at the November 2018 General Election.  Thus, Secretary Pate has not acted under color of state law as required for § 1983 liability.  Plaintiff has not stated a claim upon which relief may be granted, and the Court should dismiss the complaint.  Fed. R. Civ. P. 12(b)(6).

## II.     MOTION STANDARDS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief", and that it "be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  " '[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is something more than "sheer plausibility" -- a well-pleaded complaint will contain facts that are more than "merely consistent with" a defendant's liability. *Iqbal*, 556 U.S. at 678.

By contrast, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*  This is because legal conclusions couched as factual allegations fail to do the work of "showing" the entitlement to relief that Rule 8 requires. *Id.* at 678-79.  Thus, the Plaintiff's formulaic and conclusory allegation the Defendants "acted under color of the laws of the State of Iowa" [Doc. 1, ¶¶ 4-5], does not sufficiently plead underlying facts necessary to support the elements of the Plaintiff's claims. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotations and marks omitted)).  Such legal conclusions masquerading as facts are not entitled to the presumption of truth Rule 8 bestows on bona fide factual allegations. *Id*. at 679.  As detailed below, to state a § 1983 claim, a "[p]laintiff must plead facts demonstrating that the individual committing the offending action was acting under color of state law." *Rickmyer v. Browne*, 995 F. Supp. 2d 989, 997 (D. Minn. 2014).  Plaintiff has failed to plead facts plausibly showing any entitlement to relief.  Rule 12(b)(6) provides that a court must dismiss an action if a plaintiff has not stated a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).

## III.   JUDICIAL NOTICE

When addressing a Rule 12(b)(6) motion, "the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).  A court must take judicial notice of a fact if a party requests that it do so, the party supplies the necessary information, and the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (c)(2).  Accordingly, this Court can take judicial notice of the exhibits

attached to this motion as they qualify under Rule 201, do not contradict the complaint, and are public records or are embraced by the complaint. *See Kittle-Aikeley v. Strong,* 844 F.3d 727, 744 (8th Cir. 2016) (taking judicial notice of websites) (en banc) (Beam, J., concurring and dissenting); *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (noticing documents maintained on a government website).

There is no longer a heightened pleading requirement for § 1983 suits against individuals. *Doe v. Cassel*, 403 F.3d 986, 989 (8th Cir. 2005). However, the policy reason remains for requiring complaints to contain adequate factual material to allow public official defendants to respond with a coherent defense. *See Elliott v. Perez*, 751 F.2d 1472, 1476 (5th Cir. 1985) (detailing how "broad, indefinite and conclusory" allegations lead to "disruption of the official's duties, and frustration of the protections and policies underlying the immunity doctrine.")

## IV.    FACTUAL AND PROCEDURAL BACKGROUND

The facts presented here are those alleged by the Plaintiff in the complaint accepted as true for purposes of this motion, *Hamilton*, 621 F.3d at 817, or are matters embraced by the complaint and contained in the attached exhibits whose accuracy cannot be reasonably questioned, *Porous Media*, 186 F.3d at 1079, Fed. R. Evid. 201(b)(2), (c)(2).

Iowa Secretary of State Paul Pate is the State Commissioner of Elections. Iowa Code § 47.1; [Doc. 1, ⁋ 4]. Secretary Pate's duties as state commissioner include supervising the activities of county commissioners of elections, prescribing uniform practices and procedures, providing necessary forms for the conduct of elections, and promulgating rules necessary to carry out those duties. *See* Iowa Code § 47.1. In addition, Secretary Pate is the State Registrar of Voters. Iowa Code § 47.7(1). In this role, Secretary Pate is required to maintain "a single, uniform,

official, centralized" voter registration database.   Iowa Code § 47.7(2)(a).   This database is commonly known as I-Voters.   [Doc. 1 ¶ 20].

The right to vote in Iowa is a fundamental right.   *See* Iowa Const. Art. II, §1; *Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845 (Iowa 2014).   However, the right to vote in Iowa is not absolute.   An eligible voter must be a citizen of the United States, a resident of Iowa, at least eighteen years old, and not registered anyplace else.   *See* Iowa Code §48A.5.   In addition, a person is disqualified from voting if the person has been convicted of a felony under state or federal law and his or her rights have not been restored or the person has been judged incompetent to vote by a district court.   *See* Iowa Code §48A.6.

As noted above, I-Voters is the common name for the statewide voter registration system. I-Voters is maintained by the Secretary of State.   Each county auditor is responsible for maintaining the information about that county's voters within the I-Voters system. [Doc. 1, ¶ 28]. This includes voter registration Iowa Code § 48A.3, changes to registration records, Iowa Code § 48A.27, updated maintenance of the registration rolls, Iowa Code § 48A.28; and updating voter history.

A voter's registration is canceled when the Secretary of State receives information that a voter has been convicted of a felony.   *See* Iowa Code § 48A.30.   The clerk of the district court, or the United States attorney sends information that a registered voter has been convicted of a felony to the Secretary of State.   *See* Iowa Code § 48A.30(1)(d).   The Secretary of State determines in which county the voter was registered and notifies the county auditor of the conviction.   *See id*. The county auditor cancels the registration and sends notice to the voter that his or her registration has been canceled because of the felony conviction.   *See* Iowa Code §48A.30(2).

Plaintiff Jessica Bensley, a resident of Des Moines was charged with a felony in June 2011. [Doc. 1, ¶ 8]. She eventually pled guilty to an aggravated misdemeanor charge and received a suspended sentence. [Doc. 1, ¶ 12]. Bensley was charged with two additional felonies unrelated to this June 2011 incident, which were dismissed. [Doc. 1, ¶ 13]. Plaintiff has never been convicted of a felony. [Doc. 1, ¶ 14]. From 2012 to 2018, Bensley voted in local and national elections without incident. [Doc. 1, ¶ 15]. She alleges that she voted as "usual" at the Staves United Methodist Church in Polk County, Iowa on November 6, 2018. [Doc. 1, ¶ 17].

Under article II, section 5 of the Iowa Constitution, no "person convicted of any infamous crime, shall be entitled to the privilege of an elector." Iowa Code section 39.3(8) defines "infamous crime" as a felony. *See also* Iowa Code § 48A.6(1) (providing that any person "who has been convicted of a felony" is disqualified from registering to vote or voting). The Iowa Supreme Court upheld this definition in *Griffin v. Pate*, 884 N.W.2d 182 (Iowa 2016).

Plaintiff Jessica Bensley first registered to vote in August 2009. (Ex. 1). However, that registration was canceled in January 2010 when the Polk County Auditor was unable to verify her residential address. (Ex. 1). Ms. Bensley registered again on Election Day in 2012. (Ex. 1). Ms. Bensley voted in the 2016 General Election. (Ex. 1). Ms. Bensley updated her registration when she moved in 2014 and again when she changed residences in 2017. (Ex. 1).

In August 2017, the Secretary of State received notice from the Iowa District Court that Ms. Bensley was a convicted felon. (Ex. 1). The Secretary of State notified the Polk County Auditor, and in September 2017 the Polk County Auditor mailed Ms. Bensley correspondence informing her that her voter registration had been canceled because of a felony conviction. (Ex. 1). Ms. Bensley apparently did nothing with this notice to correct the Polk County Auditor.

In fact, Ms. Bensley did nothing at all with her voting status until she showed up to vote on election day, November 6, 2018.  [Doc. 1, ⁋ 39].  Like all voters at the 2018 General Election, Ms. Bensley was asked to show identification so that the precinct election official could check her in and provide her a ballot.  *See* Iowa Code § 49.78.  Upon pulling up Ms. Bensley's voter record, the precinct election official saw that Ms. Bensley's registration was canceled because she had been identified by the Iowa District Court as a felon.  Importantly, Ms. Bensley was not turned away at polls.  Rather, she was offered and voted a provisional ballot.  Ms. Bensley alleges that no one informed her that there was an issue with her registration or ballot.  [Doc. 1, ⁋ 40].  But this was not the case.  She was given a receipt for that ballot explaining why she was voting a provisional ballot, and what she was required to do to cure any registration deficiency to allow the ballot to be counted, and the deadline by which she had to act.  Ms. Bensley failed to take any action to cure her provisional ballot.  Then, in compliance with state law, the Auditor mailed Ms. Bensley a notice that her ballot had not been counted because she had failed to cure the defect.  [Doc. 1, ⁋ 41].  Only after Ms. Bensley received this letter did she contact the Polk County Auditor's office, on November 26, 2018.  [Doc. 1, ⁋ 46].

Upon receiving the call from Ms. Bensley, the Polk County Auditor and Secretary of State offices went to work.  [Doc. 1 ⁋ 49].  On December 4, 2018, Ms. Bensley's voter registration profile was corrected, and Ms. Bensley's eligibility to vote was confirmed. [Doc. 1, ⁋ 55]; (Ex. 1).[1]  Ms. Bensley subsequently has voted in a local option sales tax special election in March 2019, in the city and school election in November 2019, in the Primary Election in June 2020, and in the General Election in November 2020.  [Doc. 1 ⁋ 56]; (Ex. 1).

---

[1] Ms. Bensley alleges that the voter profile lists her as a "former felon."  [Doc. 1, ⁋⁋ 53-54].  This is not a statement of her legal standing.  It is a quirk of a system that was developed in 2006 after the passage of the Help America Vote Act.  *See* Iowa Code § 47.7.

Plaintiff alleges that Secretary Pate and Auditor Fitzgerald denied her her right to vote. [Doc. 1, ⁋ 59]. Plaintiff further alleges that the defendants failed to provide her with due process to challenge her classification as a felon in the I-Voters system. [Doc. 1, ⁋ 62].

## V.    ARGUMENT

The Plaintiff has failed to adequately state a claim that Secretary Pate violated 42 U.S.C. § 1983 when Plaintiff's voter registration was canceled because she was listed as a convicted felon in information provided by the clerk of the district court. Ms. Bensley was sent notice that her voter registration was canceled at the time that it happened. She was offered and voted a provisional ballot and made aware of the need to correct the error at the time she voted the ballot. Ms. Bensley did not avail herself of the opportunity at either time. Secretary Pate did not act in any impermissible manner with respect to Ms. Bensley's right to vote.

To test the adequacy of the complaint, it is necessary first to discuss the substantive "principles implicated by the complaint" by "taking note of the elements [the] plaintiff must plead to state [the] claim" contained in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675–77 (2009) (following *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and discussing elements of discrimination claim). Here, the Plaintiff's § 1983 claim can be distilled to two elements. In the statutory parlance of § 1983, any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. More plainly: "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color

of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). So, the Plaintiff must prove Secretary Pate (1) acted under color of state law and (2) violated Ms. Bensley's right to vote.

A substantial body of case law defines what it means for a person to act under color of state law. The under-color-of-state-law standard derives from case law defining the "state action" requirement of the Fourteenth Amendment, and it is given content by reference to that older and broader body of case law. In fact, the original forerunner to § 1983 "was passed for the express purpose of enforcing the Provisions of the Fourteenth Amendment." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 934 (1982) (internal citations and marks omitted). But if § 1983 creates "a remedy as broad as the protection that the Fourteenth Amendment affords," *id.*, it is a creature of that Amendment and can be no broader. At the same time, the Plaintiff's underlying constitutional claim is enforceable against a state actor only because it was "incorporated" against the states by the Fourteenth Amendment. *See New York Times v. Sullivan*, 376 U.S. 254, 277 (1964) (citing *Gitlow v. New York*, 268 U.S. 652, 666 (1925)). Thus, the Fourteenth Amendment state-action requirement limits the Plaintiff's § 1983 claim twice over. The Fourteenth Amendment to the United States Constitution provides in pertinent part that "No State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend XIV (emphasis added). The Court's jurisprudence of the ensuing century-plus has taught that "the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States." *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948)). "That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Id. (quoting *Shelley*, 334 U.S. at 13). The "time-honored" state-action requirement is "necessary to prevent the Fourteenth Amendment from obliterating the Framers' carefully crafted balance of power between the States and the National Government." *United*

*States v. Morrison*, 529 U.S. 598, 620 (2000) (citing *United States v. Harris*, 106 U.S. 629, 639 (1883)). That is, absent the state-action requirement, the Fourteenth Amendment would essentially strip the states of their general police power and shift that power to the federal government. *Id.* "Careful adherence to the 'state action' requirement preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar*, 457 U.S. at 936. "By enforcing that constitutional boundary between the governmental and the private, the state-action doctrine protects a robust sphere of individual liberty." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Thus, the under-color-of-state-law element of Plaintiff's § 1983 claim is no mere statutory contrivance; it is the statutory embodiment of primary principles of federalism. The element inheres "a fundamental fact of our political order" requiring federal courts "to respect the limits of their own power as directed against state governments and private interests." *Lugar*, 457 U.S. at 936–37.

### A.    Denial of Right to Vote

Ms. Bensley first claims that Secretary Pate denied her right to vote.  However, nothing in her complaint points to any action by Secretary Pate that prevented Ms. Bensley from casting a ballot.  The Complaint alleges that Secretary Pate maintains a "felony exclusion database."  [Doc. 1, ¶ 22].  Secretary Pate maintains the I-Voters database, [Doc. 1, ¶ 20], that contains the registration status and voting history of each registered voter in Iowa.  Responsibility to keep the records of each voter in a county lies with the county auditor of that county.  *See* Iowa Code §47.7(2)(c).

Ms. Bensley alleges that Secretary Pate and his predecessors have been aware since 2012 of errors regarding felon records in the I-Voters database.  [Doc. 1, ¶¶ 34-38].  However, she does not point to any action by Secretary Pate at the time her voter file was updated with information

from the clerk of court.  Rather, she points fingers at the Secretary and county auditors over resources and responsibility.  What she does not do, however, is allege any facts that show that Secretary Pate knew that records of felony convictions that he received in 2017 were incorrect, let alone that he knew that her record was incorrect.  Moreover, she does not allege that the Secretary was ignoring errors in I-Voters.  In fact, her complaint shows that Secretary Pate and his predecessor were working to correct errors. [Doc. 1, ¶¶ 34-38].  Indeed, Ms. Bensley does not allege one act by the Secretary that prevented her from casting a ballot.  In fact, the Secretary of State is not responsible for conducting an election.  Each alleged misstep by Secretary Pate and his predecessors are at most ministerial, and while perhaps inconvenient, do not result in a denial of the franchise because of the protections available to voters in Iowa law.

The fact that there were errors in the database does not relieve a convicted felon of the loss of the right to vote unless and until those rights are restored under Iowa law.  Likewise, a registered voter who was incorrectly flagged with a canceled voter registration had notice and opportunity at the time of cancelation or when presenting to vote to correct the error through the provisional ballot process.

### B.       Procedural Due Process

"Procedural due process" requires a two-step review: first, whether there exists a liberty or property interest of which a person has been deprived, and second, whether the procedures followed by the State were constitutionally sufficient.  *Jenner v. Nikolas*, 823 F.3d 713, 716 (8th Cir. 2016) (citing *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). Plaintiff alleges that she did not know that her ballot in the November 2018 General Election was not counted until she received a notification on November 20, 2018.  Complaint ¶ 41.  However, Ms. Bensley's voter profile shows that she was sent a notice at her current address

that her voter registration was canceled in August 2017.  Even assuming that Ms. Bensley did not receive that notification or was unaware of it when she went to vote in 2018, she would have been given a receipt for a provisional ballot at the time we voted.  *See* Iowa Code § 49.81.  It is undisputable that Ms. Bensley voted a provisional ballot because she received the letter on November 20, 2018 informing her that the county was unable to count her ballot.[2] [Doc. 1, ⁋ 41].  That letter was required by Iowa law.  *See* Iowa Code 50.22(3).  Ms. Bensley had from the time she voted until the special precinct board convened at noon the Monday following the election to provide a statement or documents correcting the error in her voter registration profile that would have allowed the special precinct board to count her ballot.  *See* Iowa Code § 50.20.  Thus, Iowa law plainly provides an opportunity to Ms. Bensley to be heard before her provisional ballot was considered.  Ms. Bensley failed to avail herself of that opportunity.  Likewise, her procedural due process claim must fail.

### C.    Secretary Pate is entitled to qualified immunity from suit in his individual capacity and from damages in his official capacity.

Secretary Pate is immune from this suit due to the qualified immunity doctrine and is immune from damages in his official capacity due to the State of Iowa's sovereign immunity.  Despite arguing defendants acted under color of state law, the Plaintiff has not named the state as a party. The Eleventh Amendment would foreclose any liability. U.S. Const. amend 11. Instead, the Plaintiff has named Secretary Pate in his individual capacity as Iowa Secretary of State.  The doctrines of qualified and sovereign immunity protect Pate from all but one of Plaintiff's requests for relief.

---

[2] The court presumes the facts as alleged in the Complaint as true for the purposes of this Motion to Dismiss, but the Court does not have to accept completely implausible factual allegations.  *Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

First, as an individual, Secretary Pate is entitled to qualified immunity.  Qualified immunity shields public officials from civil liability in a § 1983 action when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc). The Court routinely reiterates "the longstanding principle" that " 'clearly established law' should not be defined 'at a high level of generality.' " *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id*.

Second, a long-standing legal fiction allows a plaintiff to circumvent the Eleventh Amendment and doctrines of immunity by naming a state official in their official capacity. *Ex parte Young*, 209 U.S. 123, 160 (1908). Yet, such suits extend only to suits "seeking prospective injunctive relief for violations of federal law," and do not allow for money damages. *Klingler v. Dir., Dep't of Revenue*, 281 F.3d 776, 777 (8th Cir. 2002). The Plaintiff's request for money damages must be dismissed.

## VI.  ALTERNATIVE REQUEST FOR INTERLOCUTORY APPEAL STATEMENT

Should the Court deny Defendants' motion, Secretary Pate requests that the Court state that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292. If the Court so states in its order, Secretary Pate additionally requests that the Court stay the action while he pursues permission for, and, if granted, undertakes, an interlocutory appeal pursuant to Federal Rule of Appellate Procedure 5.

## VII.    CONCLUSION

Plaintiff does not state any claim upon which relief may be granted. The Court should dismiss the complaint. Short of that, the Court should dismiss Secretary Pate and in his individual capacity because he has qualified immunity, and it should dismiss money-damages claims against him in his official capacity because they are barred by Iowa's sovereign immunity.

Respectfully submitted,

**THOMAS J. MILLER**
Attorney General of Iowa

**_/s/ Jeffrey S. Thompson_**
JEFFREY S. THOMPSON
Solicitor General
Department of Justice-Special Litigation
Hoover State Office Building
1305 E. Walnut Street, 2nd Floor
Des Moines, Iowa 50319
Phone: (515) 281-5164
Fax: (515) 281-4902
jeffrey.thompson@ag.iowa.gov
ATTORNEY FOR DEFENDANT PATE

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on December 28, 2020:

☐ U.S. Mail               ☐ FAX
☐ Hand Delivery           ☐ Overnight Courier
☐ Federal Express         ☐ Other
☒ CM/ECF

Signature: _/s/ Audra Drish_

---