# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| JESSICA BENSLEY, | : | |
| | : | CIVIL ACTION # 4:20-cv-00329 |
| Plaintiff, | : | |
| | : | |
| v. | : | PLAINTIFF'S RESISTANCE TO |
| | : | DEFENDANT JAMIE FITZGERALD'S |
| PAUL PATE, Iowa Secretary of State, and | : | MOTION TO DIMISS |
| JAMIE FITZGERALD, Polk County | : | |
| Auditor, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S RESISTANCE TO DEFENDANT JAMIE FITZGERALD'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

COMES NOW the Plaintiff, Jessica Bensley, by and through her undersigned counsel, and for her Brief in Resistance to Defendant Jamie Fitzgerald's 12(b)(6) Motion to Dismiss states:

## TABLE OF CONTENTS

STANDARD OF REVIEW ................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

  A. Defendant Fitzgerald violated Bensley's Fundamental Right to Vote by Disqualifying Her Vote in the Basis of a Non-Existent Felony Conviction. ............................................. 5

  B. Bensley's Due Process Claim is Plausible on its Face Because She Alleges Defendant Fitzgerald Failed to Notify and Provide Her With a Meaningful Opportunity to Challenge Her Placement on the Convicted Felons Disqualified Voters List in Polk County. .......... 9

CONCLUSION ..................................................................................................................... 13

## STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court assumes as true all factual allegations of the complaint, *Abels v.*

*Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001), and should not dismiss the complaint "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 1957) (*emphasis added*). The Court must also construe the complaint liberally in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). While the complaint must contain sufficient facts to satisfy the legal requirements of the claim to avoid dismissal, *DuBois v. Ford Motor Credit Co.*, 267 F.3d 1019, 1022 (8th Cir. 2002), "[i]n appraising the sufficiency of the complaint we follow . . . the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007). In other words, to survival dismissal, the complaint must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.662 (2009).

This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 664.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

2

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal alterations and citations omitted). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## ARGUMENT

It is important to begin with what is obvious and most important: Defendant Fitzgerald does NOT and CANNOT assert that at the time of the incidents in the Complaint that Bensley was either a disqualified felon or an otherwise disqualified voter that was therefore unable to exercise her constitutionally guaranteed right to vote under the First and Fourteenth Amendments to the United States Constitution. Bensley has never been a convicted felon or otherwise disqualified to exercise that fundamental right.  Doc. No. 1, ¶ 14. Instead, Defendant Fitzgerald argues that: 1) Bensley's Complaint must be dismissed because Defendant Fitzgerald himself did not take any "affirmative action to personally violate Defendant's constitutional right to vote; and 2) Bensley's due process claim is implausible on its face. Doc. No. 7-1, pp. 5-10.  Both arguments by Defendant Fitzgerald are unavailing.

Also, as a preliminary matter, Defendant Fitzgerald also asks this Honorable Court to take judicial notice of three exhibits attached to their Motion to Dismiss: 1) a sample provisional ballet; 2) a sample notification of provisional ballot rejection; and 3) Bensley's I-Voter profile. Defendant Fitzgerald argues the records are public documents kept in the regular course of business and therefore this Honorable Court can take judicial notice of the records and consider them in considering Fitzgerald's Motion to Dismiss.  Doc. No. 7-1, pp. 4-5; *citing Faibisch v. University of Minnesota*, 304 F.3d 797, 802 (8th Cir. 2002).

To begin with, Exhibits 1 and 2 are "sample" documents that are not specific to Bensley and do not provide useful public information to the Court about Bensley and the specific facts of this Complaint.[1] With regards to Exhibit 3—Bensley's "I-Voter Profile"—Defendant Fitzgerald does not cite to a statute or code section either designating such information as a public record or authorizing the release of Bensley's entire profile as a public record. Doc. No. 7-1, pp. 4-5. Iowa Code Section 48A "Voter Registration" controls Voter Registration information. Ia. Code § 48A 2020. Section 48A.34 controls the confidentiality of such records. Section 48A.34 says "[v]oter registration records are available for public inspection at reasonable times at the office of the county commissioner."[2] Ia. Code § 48A.34 2020. Section 48A.38 further indicates that a list of registered voters may be requested and subject to removal of the social security numbers, driver's license numbers, identification card numbers and voter identification numbers, made available with data on "registration and participation in elections." Ia. Code § 48A.38(1) & .38(1)(f) 2020.

By the statute's plain definition, the voter information publicly available is limited to Bensley's actions as a voter—*her* voter registration and *her* participation in elections. *See Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (the "one cardinal canon before all others" is that "courts must presume that a legislature says in a statute what it means and means in

---

[1] Exhibits 1 & 2 do not contain any information linking them to Bensley, and her voter profile. To the extent Defendant Fitzgerald is attempting to argue that Exhibit 3 indicates Bensley was notified of her placement in the 'Disqualified Voter List' because of a felony conviction, Doc. No. 7-1, p. 6, n.1, Bensley's Complaint disputes this and neither of the "sample" exhibits would place this dispute beyond factual doubt as required on summary judgment, let alone meet the standard for a motion to dismiss where this Court is required to accept all factual allegations in the Complaint as true. *Abels*, 259 F.3d at 914. It is also undersigned counsel's understanding that any of the documents "referenced" in Bensley's I-Voter Profile are unable to be produced by the Defendants and thus are the exact sort of thing that will be subject to discovery and factual dispute during the pendency of this litigation.

[2] Section 48A.2 - Definitions does not help matters since it defines "voter list" as a "a compilation of voter registration records produced, upon request, from the electronic voter registration file or by viewing, upon request, the original, completed voter registration applications and forms." Ia. Code § 48A.38(1)(8).

a statute what it says there"). The actions taken by the State regarding Bensley status as a voter are not available on any public websites and are not the types of information contemplated by the statute that are subject to public availability. Therefore, such exhibits should not be subject to judicial notice at the motion to dismiss stage. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citations omitted) ("[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy"); *see also Holloway v. Lockhart*, 813 F.2d 874, 879 (8th Cir. 1987) (citing Fed.R.Evid. 201(b) advisory committee notes).

    A. **Defendant Fitzgerald violated Bensley's Fundamental Right to Vote by Disqualifying Her Vote in the Basis of a Non-Existent Felony Conviction.**

Defendant Fitzgerald does not dispute that Bensley is a qualified voter in the State of Iowa and was a qualified voter in Iowa in 2018 at the time of the incidents that are the subject of this lawsuit. Doc. No. 7-1, p. 2. Furthermore, Defendant Fitzgerald does not dispute that Bensley's vote in November of 2018 was not counted because of her erroneous placement on the disqualified voter list related to person's with felony convictions. *Id.* Instead, Fitzgerald mysteriously argues that Bensley's Complaint does not list an act by Polk County Auditor Jamie Fitzgerald that caused this constitutional deprivation. *Id.*, at pp. 5-6.

The right to vote by Bensley and all qualified voters is fundamental right in Iowa and the nation. *See Chido v. Section*, 43.24 Panel, 846 N.W. 2d 845 (Iowa 2014); *Reynolds v. Sims*, 377 U.S. 533 561-62 (1964). Since protection of the right to vote is "preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds*, 377 U.S. at 562. Bensley did not just have to constitutionally guaranteed right to cast her ballot *but to have that ballot counted. U.S. v. Classic*, 313 U.S. 299,

315 (1941) (*emphasis added*).³ All parties here agree Bensley's vote did not count despite her being a qualified voter.

Instead, understanding this fact is beyond dispute, Polk County Auditor Jamie Fitzgerald curiously argues that he cannot be liable for that constitutional violation because Bensley's Complaint fails to assert how he is *personally* responsible for the violation. Doc. No. 7-1, pp. 5-6. As an initial matter and most importantly, this assertion by Defendant Fitzgerald regarding Bensley's Complaint is factually inaccurate. Bensley's Complaint is rife with examples of Fitzgerald's action or inaction in fixing the widespread and known constitutional problems with Iowa's I-VOTER'S felon-exclusion list. Bensley's Complaint details that:

1. Defendant Fitzgerald was responsible for maintaining a list of registered voters from Defendant Pate whose ballots should be rejected in Polk County as a result of a felony conviction, Doc. No. 1, ¶ 28;
2. Within fifteen days of receiving a list/name from Defendant Pate, Defendant Fitzgerald was responsible for verifying the accuracy of the state database/list and to remove the names of registered voters deemed ineligible because of a felony conviction, Doc. No. 1, ¶ 29;
3. Defendant Fitzgerald did not regularly conduct this audit or otherwise attempt to verify the information provided by Defendant Pate before excluding people, including Bensley, from exercising their constitutional right to vote, Doc. No. 1, ¶ 30;
4. Defendant Fitzgerald was supposed to send a notice to voters like Bensley they flagged as felon excluded and Fitzgerald did not provide notice to Bensley and other felon-excluded voters; Doc. No. 1, ¶¶ 31-32;
5. Defendant Fitzgerald had been aware since at least 2012 that the felony exclusion database was rife with errors and has been excluding people like Bensley from exercising their constitutional right to vote, Doc. No. 1, ¶ 34;

---

³ Courts evaluate the constitutionality of a challenged election law by applying the *Anderson - Burdick* test. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). That test requires Courts to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights. *See Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434. Thus, a law constituting a complete deprivation of the right to vote as is the case here would be subject to strict scrutiny. *Burdick*, 504 U.S. at 434. Defendant Fitzgerald, however, *is not attempting to argue that the deprivation of Bensley's right to vote is constitutionally permissible regardless of the level of scrutiny applied.* Instead, Fitzgerald curiously appears to be arguing the deprivation if Bensley's fundamental right was not his fault or responsibility.

6. In 2014, then Iowa Secretary of State created a task force that put the onus on Defendant Fitzgerald to check and verify felon exclusion information before rejecting or excluding provisional ballots, Doc. No. 1, ¶ 35; and
7. Defendant Fitzgerald pushed back claiming lack of information and resources to complete the necessary checks verifying excluded felons, Doc. No. 1, ¶ 36.

Therefore, far from failing to assert an affirmative act by Defendant Fitzgerald in denying Bensley her constitutional right to vote, Bensley's Complaint details multiple actions and inactions by Fitzgerald that, as the Polk County Auditor, led to the deprivation of Bensley's fundamental right.

Defendant Fitzgerald was and is the Polk County Auditor and as such is the County Commissioner of Elections responsible for registering voters and conducting elections in Polk County, Iowa. Ia. Code § 47.2(1). As part of his duties as the County Commissioner of Elections, Fitzgerald was and is responsible for maintaining the voter registration records in Polk County, including those considered "disqualified" voters. Ia. Code § 48A.35; 48A.6. Additionally, as County Commissioner of Elections, Fitzgerald appoints a Special Election Board (pursuant to Iowa Code §§ 49.12 & 13) whose responsibility is to determine to qualifications of people who have voted by absentee or provisional ballot within the precinct. Iowa Code §§ 53.21(1), (5) and (6).

In other words, as County Auditor and County Commissioner of Elections, Defendant Fitzgerald had a duty under Iowa law to maintain a list of qualified and disqualified voters, ensure the accuracy of those lists, and utilize the lists when having his appointed Special Election Board determine whether absentee or provisional ballots should be counted. Paragraphs 28-36 of Bensley's Complaint specifically detail Fitzgerald's actions in this process of disenfranchisement and how those actions resulted in the violation of her constitutional right to vote. As such, Bensley is not making an improper respondeat

superior claim to this constitutional violation, nor a claim premised on *Monell v. Department of Soc. Svcs*, 436 U.S. 658 (1978) and its progeny.

Instead, Bensley's claim is that Defendant Fitzgerald is one of the primary parties responsible for placing Bensley on a list that disqualified voters and one of the parties responsible for failing to check the accuracy of that information and ensuring that Bensley's vote was counted. *See Missouri Protection v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (ruling that even when the Secretary of State is the chief election official responsible for registering voters, the delegation of broad authority to local election officials would make both proper parties); *see also Janis v. Nelson*, Civ. No. 09-5019, 2009 WL 5216902, at *7 (D.S.D. Dec. 30, 2009) ("[i]n light of the broad scope of the Voting Rights Act and the facts set forth in the amended complaint and discussed above, it is reasonable to infer that state defendants may be liable for the alleged violations of Section 2 . . . of the Voting Rights Act *because they are authorized to promulgate rules pertaining to numerous voting matters, including the uniformity of election procedures, voter file maintenance, and implementation of the NVRA*") (*emphasis added*). In fact, in *Missouri Protection*, the Eighth Circuit ruled the Eleventh Amendment did not bar suit where the state official "has some connection with the enforcement the act." *Id*. (citing *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir.2005)).

Given these actions by Defendant Fitzgerald, and because he does not dispute that Bensley was deprived of her fundamental right to vote, it would be improper for this Honorable Court to dismiss Count I of Bensley's Complaint at this early stage given that Bensley has pled with more than sufficient specificity how Fitzgerald is responsible for

8

that violation. *See Iqbal*, 556 U.S. at 678 (a claim is plausible on its face when the allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, which is more than a sheer possibility that the defendant acted unlawfully).

### B. **Bensley's Due Process Claim is Plausible on its Face Because She Alleges Defendant Fitzgerald Failed to Notify and Provide Her With a Meaningful Opportunity to Challenge Her Placement on the Convicted Felons Disqualified Voters List in Polk County.**

Finally, Defendant Fitzgerald asserts that Bensley's Count II fails to state a claim for a due process violation on Defendant Fitzgerald's part because her claim is not plausible on its face and even if it were, a constitutional violation has not been stated because Defendant Fitzgerald is not responsible for "every instance of human error committed in his office. Doc. No. 7-1, p. 9. For similar reasons to the ones stated above, these arguments are unavailing.

Defendant Fitzgerald asserts that Bensley's due process claims fails to state a claim because he disagrees with Bensley's relevant factual averments in the Complaint. Doc. No. 7-1, pp. 9-10. Mainly, that Bensley did not receive notice of her placement on the felon disqualified voter list until mid-November 2018, when she was told that her vote was not counted. As Fitzgerald notes, however, this Honorable Court is to presume the facts in the Complaint are true and liberally construe them in Bensley's favor. *See* Doc. No. 7-1, p. 9; *Abels*, 259 F.3d at 914; *Eckert*, 514 F.3d at 806.

Bensley's Complaint factually avers that:

1. She cast her ballot in Polk County, Iowa in the November 16, 2018, general election at Staves United Methodist Church just as she had in other elections since 2012, Doc. No. 1, ¶ 39;

9

2. Bensley cast her ballot and no one indicated to Bensley that there were any potential problems or irregularities with her voting status, Doc. No. 1, 40;
3. The day before Thanksgiving, Bensley received a letter dated November 20, 2018, from the Defendant Fitzgerald's Polk County Office of Elections that informed Bensley that her "provisional ballot" was rejected because she did not meet all the eligibility requirements for voting in the election, Doc. No. 1, 41; and
4. Defendant Fitzgerald did not consistently provide notice to those potential voters including Bensley who Defendant Fitzgerald deemed excluded because of a felony conviction, Doc. No. 1, 32.

To properly state a procedural due process claim, Bensley must show: 1) there exists a liberty or property interest of which she was deprived; and 2) the procedures followed by the State in effectuating that deprivation were constitutionally sufficient. *Jenner v. Nikolas*, 823 F.3d 713, 716 (8th Cir. 2016), *citing Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (collecting Supreme Court cases illustrating this principle), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (internal quotations omitted). A pre-deprivation hearing is required when the deprivation is "pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place." *Parratt*, 451 U.S. at 537-38 (collecting Supreme Court cases). Indeed, "absent the necessity of quick action by the State or the impracticality of providing any pre-deprivation process, a post-deprivation hearing . . . would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted).

Fitzgerald does not attempt to assert or argue that Bensley does not have a liberty interest in her suffrage or right to vote. Instead, Fitzgerald seems to quibble with whether Bensley truly received the constitutionally required notice of that deprivation and thus a pre-deprivation opportunity to be heard. Despite the factual averments above in Bensley's Complaint, Defendant Fitzgerald asserts that Bensley must have voted provisionally on November 6, 2018. Doc. No. 7-1, p. 9. This assertion by Fitzgerald is inappropriate for the Court's consideration on a 12(b)(6) Motion as it is a dispute with the factual averments themselves and not a claim that the facts themselves fail to state a claim of a constitutional violation entitling Bensley to relief.

To the extent Defendant Fitzgerald is asserting that Bensley did, in fact, vote provisionally because of the use of "provisional ballot" in Paragraph 40 of her Complaint, that argument is misplaced. Bensley is not asserting she voted provisionally on November 6, 2018, but is instead merely factually reporting what the letter she received on November 20, 2018, indicated. Furthermore, to the extent Defendant Fitzgerald is asserting that Bensley's claim of not receiving notice of her disqualification is implausible based on Exhibit 3, such reliance is misplaced for several reasons.

First, as argued earlier, Bensley believes that Exhibit 3, apparently Bensley's "I-Voter Profile Report," is not a public record of which this Court can or should take judicial notice. Since such judicial notice would deprive Bensley of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that such a fact is beyond controversy. *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70.

Second, even if this Court does take judicial notice of Exhibit 3, the document does not put the factual dispute about notice to rest. Exhibit 3 apparently has some sort of audit log of actions taken by the State/County, including alleged correspondence sent to Bensley, but does not contain specifics about what that correspondence includes and certainly does not produce the actual document allegedly sent to Bensley. In other words, Exhibit 3 provides a pathway to information that might prove relevant and useful during discovery in exploring what notice, if any, Bensley was provided about her erroneous disqualification as a felon that deprived her of her right to vote, but it does not provide the answer themselves – especially answers sufficiently delineated or clear so as to dismiss Bensley's claim on a pre-answer motion.

Finally, Defendant Fitzgerald also argues that Bensley's procedural due process claim must be dismissed because she fails to allege that Fitzgerald "properly trained his staff on the need to provide notification." Doc. No. 7-1, p. 9. Once again, this argument is unavailing because Bensley is not advancing a *Monell* claim against Fitzgerald to prove his liability for the due process violation. Instead, Bensley's claim is that Fitzgerald himself is personally liable for this constitutional deprivation because as the Polk County Auditor and County Auditor and Polk County Commissioner of Elections, it is Fitzgerald's duty to keep a list of qualified and disqualified voters in Polk County (where Bensley resides) and to provide notice and hearing to those registered voters whose registration status is challenged or otherwise called into question. Iowa Code § 48A.15 & 16 (outlining the procedures for challenges, notices & hearings on registered voters). Thus, Fitzgerald is mandated by statute and law to

provide constitutionally sufficient procedures to avoid the constitutional violation that occurred to Bensley here and this, Bensley avers, he failed to do. For these reasons, Defendant Fitzgerald's Motion to Dismiss Bensley's procedural due process claim must be denied.

## CONCLUSION

For all the foregoing reasons, Defendant Fitzgerald's Motion to Dismiss Plaintiff's Complaint for failure to state a claim must be denied.

Wednesday, January 27, 2021

*s/Glen S. Downey*
Glen S. Downey                    AT0012428

THE LAW OFFICES OF GLEN S. DOWNEY, LLC
5214 Ingersoll Avenue
Des Moines, IA, 50312
412-865-7110
glen@downey-law.net


Paul J. Statler  AT0012577
301 East Walnut Street, Suite 7
Des Moines, Iowa 50309
Phone: 515.288.0509 Fax: 515.608.4484
Email: paul@statlerlaw.net

ATTORNEYS FOR JESSICA BENSLEY