## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| JESSICA BENSLEY, | : | |
| | : | CIVIL ACTION # 4:20-cv-00329 |
| Plaintiff, | : | |
| | : | |
| v. | : | PLAINTIFF'S RESISTANCE TO |
| | : | DEFENDANT PAUL PATE'S |
| PAUL PATE, Iowa Secretary of State, and | : | MOTION TO DIMISS |
| JAMIE FITZGERALD, Polk County | : | |
| Auditor, | : | |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S RESISTANCE TO DEFENDANT PAUL PATE'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

COMES NOW the Plaintiff, Jessica Bensley, by and through her undersigned counsel, and for her Brief in Resistance to Defendant Paul Pate's 12(b)(6) Motion to Dismiss states:

### Table of Contents

STANDARD OF REVIEW ........................................................................................................................ 1

ARGUMENT ........................................................................................................................................ 3

A.   Defendant Pate violated Bensley's Fundamental Right to Vote by Disqualifying Her Vote in the Basis of a Non-Existent Felony Conviction. ........................................................................................ 5

B.   Bensley's Due Process Claim is Plausible on its Face Because She Alleges Defendant Pate Failed to Notify and Provide Her With a Meaningful Opportunity to Challenge Her Placement on the Convicted Felons Disqualified Voters List in Polk County ........................................................................................ 9

C.   Pate is not Entitled to Sovereign or Qualified Immunity Against Benlsey's Claims Because he is Sued in his Individual Capacity and Qualified Immunity is Applicable and/or the Law is Clearly Established ...................... 12

D.   Defendant Pate is not Entitled to an Interlocutory Appeal Statement ............................................. 13

CONCLUSION ...................................................................................................................................... 14

## STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court assumes as true all factual allegations of the complaint, *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 914 (8th Cir. 2001). When making those assumptions, the Court should not dismiss the complaint "unless it appears *beyond doubt* that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 1957) (*emphasis added*); *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (, "[i]n appraising the sufficiency of the complaint we follow . . . the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief.")  The Court must also construe the complaint liberally in the light most favorable to the plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). The complaint must contain sufficient facts to satisfy the legal requirements of the claim to avoid dismissal, *DuBois v. Ford Motor Credit Co.*, 267 F.3d 1019, 1022 (8th Cir. 2002).  In sum, to survive dismissal, the complaint must only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.662 (2009).

This requirement of facial plausibility means that the factual content of the plaintiff's allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cole v. Homier Distrib. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010). Furthermore, courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 664.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (internal alterations and citations omitted). Nevertheless, although the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," it is not a "probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

## ARGUMENT

To reiterate Bensley's resistance to Defendant Fitzgerald's respective motion to dismiss, it is important to begin with what is obvious and most important: Defendant Pate does NOT and CANNOT assert that at the time of the incidents in the Complaint that Bensley was either a disqualified felon or an otherwise disqualified voter that was therefore unable to exercise her constitutionally guaranteed right to vote under the First and Fourteenth Amendments to the United States Constitution. Bensley has never been a convicted felon or otherwise disqualified to exercise that fundamental right.  Doc. No. 1, ¶ 14.

Instead, Defendant Pate argues that: 1) Bensley's Complaint must be dismissed because Defendant Pate himself "took no action under color of state law" to personally violate Bensley's constitutional right to vote; 2) Bensley fails to state a claim upon which relief may be granted; 3) Defendant Pate's actions were not violations of constitutional law, and under qualified immunity the claims against Pate in his individual capacity should be dismissed; and 4) Defendant Pate in his official capacity is protected against claims for damages under sovereign immunity. due process claim is implausible on its face. Doc. No. 9, p. 1.  All of these arguments by Defendant Pate are unavailing.

Defendant Pate also asks this Honorable Court to take judicial notice of the exhibit attached to their Motion to Dismiss, Bensley's I-Voter profile. Doc. No. 9-2. Defendant Pate argues the record(s) are public documents kept in the regular course of business and therefore this Honorable

Court can take judicial notice of the records and consider them in considering Pate's Motion to Dismiss.  Doc. No. 9-1, pp. 3-4; *citing Kittle-Aikeley v. Strong*, 844 F.3d 727, 744 (8th Cir. 2014).

Defendant Pate's exhibit-document(s) is not specific to Bensley and does not provide useful public information to the Court about Bensley and the specific facts of this Complaint.[1] With regards to Exhibit 3—Bensley's "I-Voter Profile"—Defendant Pate does not cite to any statutory authority designating such information as a public record or authorizing the release of Bensley's entire profile as a public record.  Doc. No. 9-1, pp. 3-4. Iowa Code Section 48A "Voter Registration" controls Voter Registration information. Ia. Code § 48A 2020. Section 48A.34 controls the confidentiality of such records.  Section 48A.34 says "[v]oter registration records are available for public inspection at reasonable times at the office of the county commissioner."[2] Ia. Code § 48A.34 2020. Section 48A.38 further indicates that a list of registered voters may be requested and subject to removal of the social security numbers, driver's license numbers, identification card numbers and voter identification numbers, made available with data on "registration and participation in elections."  Ia. Code § 48A.38(1) & .38(1)(f) 2020.

By the statute's plain definition, the voter information publicly available is limited to Bensley's actions as a voter—*her* voter registration and *her* participation in elections.  *See*

---

[1] Pate's exhibit does not contain any information linking itself to Bensley or her voter profile.  To the extent Defendant Pate is attempting to argue that the exhibit indicates Bensley was notified of her placement in the 'Disqualified Voter List' because of a felony conviction, Bensley's Complaint disputes this and the "sample" exhibit does not place this dispute beyond factual doubt as required on summary judgment, let alone meet the standard for a motion to dismiss where this Court is required to accept all factual allegations in the Complaint as true. *Abels*, 259 F.3d at 914.  It is also undersigned counsel's understanding that any of the documents "referenced" in Bensley's I-Voter Profile are unable to be produced by the Defendants and thus are the exact sort of thing that will be subject to discovery and factual dispute during the pendency of this litigation.

[2] Section 48A.2 - Definitions does not help matters since it defines "voter list" as a "a compilation of voter registration records produced, upon request, from the electronic voter registration file or by viewing, upon request, the original, completed voter registration applications and forms."   Ia. Code § 48A.38(1)(8).

*Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) (the "one cardinal canon before all others" is that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there"). The actions taken by the State regarding Bensley status as a voter are not available on any public websites and are not the types of information contemplated by the statute that are subject to public availability. Therefore, Pate's exhibit(s) should not be subject to judicial notice at this stage. *See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998) (citations omitted) ("[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy"); *see also Holloway v. Lockhart*, 813 F.2d 874, 879 (8th Cir. 1987) (citing Fed.R.Evid. 201(b) advisory committee notes).

### A. <u>Defendant Pate violated Bensley's Fundamental Right to Vote by Disqualifying Her Vote in the Basis of a Non-Existent Felony Conviction.</u>

Defendant Pate also does not dispute that Bensley is a qualified voter in the State of Iowa and was a qualified voter in Iowa in 2018 at the time of the incidents that are the subject of this lawsuit. Doc. No. 9-1, p. 6. Furthermore, Defendant Pate does not dispute that Bensley's vote in November of 2018 was not counted because of her erroneous placement on the disqualified voter list related to person's with felony convictions. *Id.* Instead, Pate argues that Bensley's Complaint does not list an act by Defendant Pate that caused this constitutional deprivation. *Id.*, at pp. 10-11.

 The right to vote by Bensley and all qualified voters is fundamental right in Iowa and the nation. *See Chido v. Section 43.24 Panel*, 846 N.W. 2d 845 (Iowa 2014); *Reynolds v. Sims*, 377 U.S. 533 561-62 (1964). Since protection of the right to vote is "preservative of other basic civil and political rights, *any* alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds*, 377 U.S. at 562 (*emphasis added*). Bensley did not just have

the constitutionally guaranteed right to cast her ballot, *but to have that ballot counted*.  *U.S. v. Classic*, 313 U.S. 299, 315 (1941) (*emphasis added*).[3]   All parties agree Bensley's vote did not count despite her being a qualified voter.

Instead, understanding this fact is beyond dispute, Iowa Secretary of State argues that he cannot be liable for that constitutional violation because Bensley's Complaint fails to assert how he is *personally* responsible for the violation. Doc. No. 9-1, pp. 10-11.   Like Defendant Fitzgerald's, this assertion by Defendant Pate regarding Bensley's Complaint is factually inaccurate. Bensley's Complaint is rife with examples of Pate's action or inaction in fixing the widespread and known constitutional problems with Iowa's I-VOTER'S felon-exclusion list. Bensley's Complaint details that:

1. Defendant Pate and his office was responsible for checking to see whether the names provided by the Iowa Clerks of Court were indeed convicted felons and registered to vote in any of Iowa's ninety-nine counties, and responsible for notifying the appropriate County Auditor's office of any person's felon status, Doc. No. 1, ¶ 23;

2. Defendant Pate and his office sent lists to each County Auditor with the names of registered voters in that county who are banned from voting as result of a felony conviction, Doc. No. 1, ¶ 24;

3. Defendant Pate did not have any steps or standards in place to verify the accuracy of the information provided to him by the Clerks of Courts before sending that information onto the County Auditors to exclude people from exercising their constitutional right to vote, Doc. No. 1, ¶ 25;

---

[3] Courts evaluate the constitutionality of a challenged election law by applying the *Anderson - Burdick* test. *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). That test requires courts to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens imposed by the rule, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights. *See Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 434. Thus, a law constituting a complete deprivation of the right to vote as is the case here would be subject to strict scrutiny. *Burdick*, 504 U.S. at 434.  Defendant Pate, however, *is not attempting to argue that the deprivation of Bensley's right to vote is constitutionally permissible regardless of the level of scrutiny applied.*

4. Defendant Pate did not conduct any audit or otherwise attempt to verify the information before providing it to Defendant Fitzgerald who was excluding people, including Bensley, from exercising their constitutional right to vote, Doc. No. 1, ¶ 25;

5. Defendant Pate maintained the onus is on Defendant Fitzgerald and other County Auditors to verify the accuracy of the information that he and his office provided to them, Doc. No. 1, ¶ 26.

Therefore, far from failing to assert an affirmative act by Defendant Pate in denying Bensley her constitutional right to vote, Bensley's Complaint details multiple actions and inactions by Pate that, as Iowa Secretary of State, led to the deprivation of Bensley's fundamental right.

Defendant Pate was and is the Iowa Secretary of State and as such is the State Commissioner of Elections responsible for supervising each county commissioner of elections, including Defendant Fitzgerald. Ia. Code § 47.1(1).  Defendant Pate is the chief state election official and is responsible for coordination of state responsibilities under the federal National Voter Registration Act of 1993. Ia. Code § 47.1(3). Defendant Pate is responsible for ensuring accurate lists of registered voters are provided to each County Auditor who also serve as the County Commissioner of Elections. Ia. Code § 47.7(7).As part of his duties as the County Commissioner of Elections, Defendant Fitzgerald was and is responsible for maintaining the voter registration records in Polk County, including those considered "disqualified" voters. Ia. Code § Ia. Code § 47.7(7); 48A.35; 48A.6.

As Secretary of State, Defendant Pate had a duty under Iowa law to maintain and communicate an accurate list of qualified and disqualified voters. Ia. Code § 47.7(7). Paragraphs 21-26 of Bensley's Complaint specifically detail Pate's actions in this process of disenfranchisement and how those actions resulted in the violation of Bensley's

constitutional right to vote.  As such, Bensley is not making an improper respondeat superior claim to this constitutional violation, nor a claim premised on *Monell v. Department of Soc. Svcs*, 436 U.S. 658 (1978) and its progeny.

Instead, Bensley's claim is that Defendant Pate is one of the primary parties responsible for maintaining Bensley on a list that disqualified voters and one of the parties responsible for failing to check the accuracy of that information and ensuring that Bensley's vote was counted. *See Missouri Protection v. Carnahan*, 499 F.3d 803, 807 (8th Cir. 2007) (affirming the Secretary of State is the chief election official responsible for overseeing voter registration process making them a proper party and not entitled to sovereign immunity under the Eleventh Amendment); *see also Janis v. Nelson*, Civ. No. 09-5019, 2009 WL 5216902, at *7 (D.S.D. Dec. 30, 2009) ("[i]n light of the broad scope of the Voting Rights Act and the facts set forth in the amended complaint and discussed above, it is reasonable to infer that state defendants may be liable for the alleged violations of Section 2 . . . of the Voting Rights Act *because they are authorized to promulgate rules pertaining to numerous voting matters, including the uniformity of election procedures, voter file maintenance, and implementation of the NVRA*") (*emphasis added*). In fact, in *Missouri Protection*, the Eighth Circuit ruled the Eleventh Amendment did not bar suit where the state official "has some connection with the enforcement the act." *Id*. (citing *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir.2005)).

Given these actions by Defendant Pate, and because he does not dispute that Bensley was deprived of her fundamental right to vote, it would be improper for this Honorable Court to dismiss Count I of Bensley's Complaint at this early stage given that

Bensley has pled with more than sufficient specificity how Pate is responsible for that violation. *See Iqbal*, 556 U.S. at 678 (a claim is plausible on its face when the allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, which is more than a sheer possibility that the defendant acted unlawfully).

**B.   Bensley's Due Process Claim is Plausible on its Face Because She Alleges Defendant Pate Failed to Notify and Provide Her With a Meaningful Opportunity to Challenge Her Placement on the Convicted Felons Disqualified Voters List in Polk County.**

Defendant Pate asserts that  Bensley's due process claims fails to state a claim because he disagrees with Bensley's relevant factual averments in the Complaint.  Doc. No. 9-1, pp. 11-12. Mainly, that Bensley did not receive notice of her placement on the felon disqualified voter list until November 20, 2018, when she was told that her vote was not counted and that "[i]t is undisputed Ms. Bensley voted a provisional because she received a letter on November 20, 2018 informing her that the county was unable to count her ballot. Doc. 9-1, pp. 12-13In fact, as Defendant points out in footnote 2, the fact of whether Bensley voted provisionally is very much in dispute. Doc. 9-1, p.12n.2.And as Pates notes, this Honorable Court is to presume the facts in the Complaint are true and liberally construe them in Bensley's favor. *See* Doc. No. 7-1, p. 9; *Abels*, 259 F.3d at 914; *Eckert*, 514 F.3d at 806.

Bensley's Complaint factually avers that:

1. She cast her ballot in Polk County, Iowa in the November 16, 2018, general election at Staves United Methodist Church just as she had in other elections since 2012, Doc. No. 1, ¶ 39;
2. Bensley cast her ballot and no one indicated to Bensley that there were any potential problems or irregularities with her voting status, Doc. No. 1, 40;
3. The day before Thanksgiving, Bensley received a letter dated November 20, 2018, from the Defendant Fitzgerald's Polk County Office of Elections that informed Bensley that her "provisional ballot"

was rejected because she did not meet all the eligibility requirements for voting in the election, Doc. No. 1, 41; and

4. Defendant Fitzgerald did not consistently provide notice to those potential voters including Bensley who Defendant Fitzgerald deemed excluded because of a felony conviction, Doc. No. 1, 32.

To properly state a procedural due process claim, Benlsey must show: 1) there exists a liberty or property interest of which she was deprived; and 2) the procedures followed by the State in effectuating that deprivation were constitutionally sufficient. *Jenner v. Nikolas*, 823 F.3d 713, 716 (8th Cir. 2016), *citing Swarthout v. Cooke*, 562 U.S. 216, 219 (2011). "The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (collecting Supreme Court cases illustrating this principle), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (internal quotations omitted). A pre-deprivation hearing is required when the deprivation is "pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place." *Parratt*, 451 U.S. at 537-38 (collecting Supreme Court cases). Indeed, "absent the necessity of quick action by the State or the impracticality of providing any pre-deprivation process, a post-deprivation hearing . . . would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted).

Pate does not attempt to assert or argue that Bensley does not have a liberty interest in her suffrage or right to vote.  Instead, Pate merely asserts that Bensley's factual averments cannot be true and are implausible. Doc. Mp. 9-1, p. 13.

To the extent Defendant Pate is asserting that Bensley did, in fact, vote provisionally because of the use of "provisional ballot" in Paragraph 40 of her Complaint, that argument is misplaced.  Bensley is not asserting she voted provisionally on November 6, 2018.  Instead,

Bensley is merely factually reporting what the letter she received on November 20, 2018, indicated. Furthermore, to any extent Defendant Pate is asserting that Bensley's claim of not receiving notice of her disqualification is implausible based on Bensley's "voter profile", such reliance is misplaced for several reasons.

First, as argued earlier, Bensley believes that Exhibit 1, purportedly Bensley's "I-Voter Profile Report," is not a public record of which this Court can or should take judicial notice. Since such judicial notice would deprive Bensley of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that such a fact is beyond controversy. *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70.

Second, even if this Court does take judicial notice of Exhibit 1, the document does not put the factual dispute about notice to rest. Exhibit 1 apparently has some sort of audit log of actions taken, including alleged correspondence sent to Bensley, but does not contain specifics about what that correspondence includes and certainly does not produce the actual document allegedly sent to Bensley. In other words, Exhibit 1 provides a pathway to information that might prove relevant and useful during discovery in exploring what notice, if any, Bensley was provided about her erroneous disqualification as a felon that deprived her of her right to vote, but it does not provide the answer themselves – especially answers sufficiently delineated or clear so as to dismiss Bensley's claim on a pre-answer motion.

Defendant Pate also argues Bensley's procedural due process claim fails because she "failed to avail herself of [the] opportunity" of "provid[ing] a statement or documents correcting the error in her voter registration profile that would have allowed the special precinct board to count her ballot." Doc. No. 9-1, p. 12. This paradigm by Defendant Pate miraculously tries to put the onus on Bensley herself to correct information that the Defendant Pate himself controlled and

is required to control under Iowa Statute – as he himself points out—in which Defendant Pate erroneously disqualified Bensley.   In other words, Pate is arguing that Bensley had the job to correct her felon status rather than the Defendants.  This argument shifts to constitutional infirmity from Pate to Bensley in an effort to avoid liability.   Bensley avers that she did not receive notice nor an opportunity to be heard about her disqualification and the loss of her fundamental right to vote and at the Motion to Dismiss stage that is more than sufficient.

For these reasons, Defendant Pate's Motion to Dismiss Bensley's procedural due process claim must be denied.

**C. <u>Pate is not Entitled to Sovereign or Qualified Immunity Against Benlsey's Claims Because he is Sued in his Individual Capacity and Qualified Immunity is Applicable and/or the Law is Clearly Established.</u>**

Finally, Defendant Pate also argues that all but one of Bensley's claims must be dismissed because Pate is entitled to sovereign and/or qualified immunity. Doc. No. 9-1, pp. 12-13. Defendant Pate argues that he is immune from Bensley's claims for perspective relief in his official capacity because of sovereign immunity.  Doc. 9-1, p. 13.  The Court should note that Bensley is not suing Defendant Pate in his "official capacity" or, in other words, is not suing the State itself, but is instead, suing Pate in his individual capacity.  Doc. No. 1, pp. 2-3.  Defendant Pate makes no argument that he is entitled to sovereign immunity in his individual capacity because the 11th Amendment does not apply to State officials sued in their personal-capacity. <u>Hafer v. Melo</u>, 502 U.S. 21 (1991).

Defendant Pate also asserts without any factual or legal argument that he is entitled to qualified immunity from Bensley's constitutional claim.  He uses quailed immunity as if it some magical talisman that protects him without regards to the facts and claims of the case before the court.

As stated, however, both of Bensley's constitutional claims have been clearly established for decades. The right to vote by Bensley and all qualified voters is fundamental right in Iowa and the nation.  *See Chido v. Section 43.24 Panel*, 846 N.W. 2d 845 (Iowa 2014); *Reynolds v. Sims*, 377 U.S. 533 561-62 (1964). Since protection of the right to vote is "preservative of other basic civil and political rights, *any* alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."  *Reynolds*, 377 U.S. at 562 (*emphasis added*).  Bensley did not just have the constitutionally guaranteed right to cast her ballot, *but to have that ballot counted.  U.S. v. Classic*, 313 U.S. 299, 315 (1941) (*emphasis added*).

"The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (collecting Supreme Court cases illustrating this principle), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986) (internal quotations omitted). A pre-deprivation hearing is required when the deprivation is "pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place." *Parratt*, 451 U.S. at 537-38 (collecting Supreme Court cases). Indeed, "absent the necessity of quick action by the State or the impracticality of providing any pre-deprivation process, a post-deprivation hearing . . . would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted).

Because these rights have been clearly established and because Defendant Pate has failed to argue to the contrary, Defendant Pate is *not* entitled to qualified immunity.

### D.  Defendant Pate is not Entitled to an Interlocutory Appeal Statement

Finally, Defendant Pate asserts that, if his Motion is denied, the Court should order that the case involves a controlling question of law and that the action should be stayed while Defendant

Pate seeks interlocutory appeal.  Defendant Pate does not assert what the controlling issue of law may be nor what the grounds for interlocutory appeal would be so the request for such relief is premature and should be denied at this time.

### CONCLUSION

For all of the foregoing reasons, Defendant Pate's Motion to Dismiss Plaintiff's Complaint for failure to state a claim must be denied.

Monday, February 1, 2021

*s/Glen S. Downey*

Glen S. Downey                              AT0012428

THE LAW OFFICES OF GLEN S. DOWNEY, LLC
5214 Ingersoll Avenue
Des Moines, IA, 50312
412-865-7110
glen@downey-law.net

Paul J. Statler  AT0012577
301 East Walnut Street, Suite 7
Des Moines, Iowa 50309
Phone: 515.288.0509 Fax: 515.608.4484
Email: paul@statlerlaw.net

ATTORNEYS FOR JESSICA BENSLEY